# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00301-SCT

*EARL WESLEY BERRY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/25/1992 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: TERRY L. MARROQUIN |
| | ROBERT M. RYAN |
| | WILLIAM J. CLAYTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | LAWRENCE L. LITTLE |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO FILE PETITION FOR POST-CONVICTION RELIEF DENIED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Earl Wesley Berry was convicted of capital murder in the Circuit Court of Chickasaw

County and sentenced as a habitual offender to death for the kidnaping and murder of Mary

Bounds.  On appeal, we affirmed the jury's verdict of guilty but vacated the death sentence

and remanded for resentencing. ***Berry v. State***, 575 So. 2d 1 (Miss. 1990), *cert. denied*, 500 U.S. 928, 111 S. Ct. 2042, 114 L. Ed. 2d 126 (1991) ("***Berry I***").

¶2. On resentencing, due to the nature and the extent of pretrial publicity, venue was changed to the Circuit Court of Union County. Again he was sentenced to death. ***Berry v. State***, 703 So. 2d 269, 273 (Miss. 1997) ("***Berry II***"). On appeal, we affirmed the sentence on all grounds except for the issue of jury selection under ***Powers v. Ohio***, 499 U.S. 400, 111 S. Ct. 1634, 113 L. Ed. 2d 411 (1991), and ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). ***Berry II***, 703 So. 2d at 295. We remanded the case for a hearing on whether in exercising its peremptory challenges the State violated ***Batson***.

¶3. Following the ***Batson*** hearing, the circuit court held that Berry failed to establish a prima facie case of purposeful discrimination and that the strikes made by the State were race neutral. We affirmed the circuit court's findings and denial of Berry's ***Batson*** motion. ***Berry v. State***, 802 So. 2d 1033, 1036 (Miss. 2001) ("***Berry III***").

¶4. Subsequently Berry filed with this Court the instant Application for Leave to File Petition for Post-Conviction Relief. We find that the application is not well taken.

## DISCUSSION

¶5. Provided there is no procedural bar, when determining whether to grant leave to seek relief under the Mississippi Uniform Post-Conviction Collateral Relief Act, we determine if there is substantial showing of a denial of a state or federal right. Miss. Code Ann. § 99-31-27(5) (2000). *See also* ***Moore v. Ruth***, 556 So. 2d 1059, 1061 (Miss. 1990).

### I. WHETHER TRIAL AND APPELLATE COUNSEL WERE CONSTITUTIONALLY INEFFECTIVE.

¶6.     To establish a claim for ineffective assistance of counsel a petitioner must prove that under the totality of circumstances (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Benson v. State*, 821 So. 2d 823, 825 (Miss. 2002); *Burns v. State*, 813 So. 2d 668, 673 (Miss. 2001). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Burns*, 813 So. 2d at 673 (citations omitted).

¶7.     With regard to the showing of deficient performance, the inquiry focuses on whether counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. That is, consider whether the assistance was reasonable under all the circumstances seen from counsel's perspective at the time, and the prevailing professional norms for attorneys. *Id.* at 688; *Burns*, 813 So. 2d at 673; *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1988). Because of the distorting effects of hindsight, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Burns*, 813 So. 2d at 673.

¶8.     With regard to the showing of the deprivation of a fair trial, the petitioner must show how counsel's errors prejudiced the defense. *Id.* at 73-674. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* If the *conviction* is challenged, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 694. If the *sentence* is

challenged, the question is whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court to the extent it independently reweighs the evidence–would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id.*

¶9.     Berry cites several instances as illustrations of counsel's ineffectiveness. We must consider whether the petition, affidavits, and trial record render it sufficiently likely that he received ineffective assistance of counsel so that an evidentiary hearing should be held. *Neal*, 525 So. 2d at 1281.

*Failure to Obtain a Change of Venue for the Trial*

¶10.    Emphasizing the fact that a change of venue was granted for resentencing after *Berry II*, Berry claims that counsel should have secured a change of venue before the first trial in 1988. He also points to the fact that counsel presented only three witnesses at the hearing and argues that, since the State presented eleven witnesses, the defense's three witnesses were woefully inadequate.

¶11.    Under Mississippi law, once a motion for change of venue which is supported by three affidavits is filed, a presumption arises that the defendant has been prejudiced by pretrial publicity. If a defendant presents fifteen witnesses, an irrebutable presumption of prejudice arises. *See Fisher v. State*, 481 So. 2d 203 (Miss. 1985); *Johnson v. State*, 476 So. 2d 1195, 1213 (Miss. 1985). Assuming, arguendo, that the failure to secure an irrebuttable presumption satisfied the first prong (deficiency) under *Strickland*, we find that Berry fails to show how such a failure deprived him of a fair trial. Accordingly, leave to seek post-conviction relief of this issue is denied.

4

*Failure to Object to the Change of Venue for Resentencing*

¶12.    Berry contends that trial counsel was ineffective for failing to object to the change of venue to Union County, which has a twenty percent fewer African-Americans than Chickasaw County. Berry, a Caucasian, fails to discuss how the county's racial composition impacted his rights or potential jurors' rights. We considered this issue in ***Berry II*** and found it to be procedurally barred. ***Berry II***, 703 So.2d at 292. "Our case law is clear in that there is no constitutional right to be tried by a jury that absolutely mirrors any particular community." ***Simon v. State***, 688 So. 2d 791, 806 (Miss. 1997). This issue is without merit.

*Failure to Object to the State's Improper Remarks on Credibility*

¶13.    Berry contends that the State improperly bolstered the credibility of Billy Gore, an investigator for the highway patrol. We discussed this issue in ***Berry I*** and found it to be procedurally barred. ***Berry I***, 575 So. 2d at 9. In doing so, we went on to say that "[s]ubstantively, broad latitude is afforded [] attorneys in closing argument, and the prosecutor did not exceed the limits of the argument in this case." ***Id***. Though not asked to admonish the jury regarding such comments, the circuit court instructed the jury that the testimony of a police officer is entitled to no special or exclusive sanctity. ***Id***.

¶14.    Considering such instructions and bearing in mind that the decision whether to make certain objections falls within the ambit of trial strategy, we find that this issue is without merit. *See generally* ***Jackson v. State***, 815 So. 2d 1196, 1200 (Miss. 2002).

*Failure to Object to Testimony about Berry's Status as a Habitual Offender*

¶15.    On resentencing during voir dire, the circuit court disclosed that Berry was a habitual offender and later included such fact in the sentencing instructions. Berry claims that in both

5

instances counsel was ineffective by failing to object. Berry fails to clearly define how this issue impacts his ineffective assistance of counsel claim.

¶16. We addressed this issue in *Berry I* and held that in a capital case, before considering sentencing options, a jury should be informed that the defendant has been adjudicated as an habitual offender. *Berry I*, 575 So. 2d at 13-14. Actually, resentencing was ordered because the circuit judge failed to instruct the jury that Berry was an habitual criminal. *Id*. at 13. This issue is without merit.

¶17. Berry's argument seemingly hinges on the fact that his status was disclosed during voir dire, rather than just prior to deliberations. The record reveals that the circuit court worked diligently to follow the Court's holding in *Berry I*. Finding that the circuit court reasonably applied the holding *Berry I*, there was no cause for defense counsel to object. Likewise, as for the inclusion in the sentencing instructions, we find that the circuit court sought to comply formally with our holding in *Berry I*.

*Failure to Object to Hearsay Testimony*

¶18. Berry contends that trial counsel failed to object to the hearsay testimony of the Oktibbeha County Sheriff Dolph Bryan, a witness for the State. During resentencing, Sheriff Bryan testified as to Berry's previous conviction of simple assault of law enforcement officer Jimmy McClemore. Berry claims that counsel allowed the Sheriff, though not a witness to the attack, to testify regarding specific facts of the incident. This issue is without merit.

¶19. During the assault, Berry was shot by Officer McClemore. Trying to undermine the conviction, the defense cross-examined the Sheriff regarding Berry's successful civil suit

against Officer McClemore in federal court.[1] On redirect, Sheriff Bryan briefly testified as to Officer McClemore's physical size and his reasons for shooting Berry.

¶20. Berry fails to discuss how counsel's failure to object supports his ineffective assistance of counsel but instead alleges that the testimony was improper hearsay. The testimony was likely hearsay, but "issues which were either presented through direct appeal or could have been presented on direct appeal or at trial are procedurally barred and cannot be relitigated under the guise of poor representation by counsel." *Foster v. State*, 687 So. 2d 1184, 1129 (Miss. 1997). Likewise, counsel's choice whether to make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim. *Jackson*, 815 So. 2d at 1200.

> *Failure to Object to the State's Comments Comparing*
> *the Victim's Rights with Berry's Rights as a Criminal Defendant*

¶21. During the closing argument, the State drew several comparisons between the respective rights of Bounds and Berry. Berry claims that such an argument is prosecutorial misconduct and that counsel failed to object and preserve the issue for appeal.[2] We find that the comments were egregious and possibly rose to the level of prosecutorial misconduct. However, the failure to object does not render counsel's performance ineffective.

---

[1]He received a judgment for $5,000.

[2]The prosecutor commented on the facts that: 1) Bounds did not receive mercy, justice, or mitigation; 2) by taking her away, neither Bounds' daughter nor her husband received mercy or justice; and 3) Berry should receive the same punishment that given to Ms. Bounds without a hearing or jury.

¶22. To determine whether the prosecutor's closing remarks were prosecutorial misconduct, we must determine whether the prosecutor's remarks denied the defendant a fundamentally fair trial. *Stringer v. State*, 500 So. 2d 928, 939 (Miss. 1986); *see also United States v. Young*, 470 U.S. 1, 16, 105 S. Ct. 1038, 1045, 84 L. Ed. 2d 1, 13 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872, 40 L. Ed. 2d 431, 438 (1974). The prosecutor's remarks are viewed in light of the entire trial. *See id.*, 416 U.S. at 645, 94 S. Ct. at 1872, 40 L. Ed. 2d at 438; *United States v. Bright*, 630 F.2d 804, 825 (5th Cir. 1980); *United States v. Austin*, 585 F.2d 1271, 1279 (5th Cir. 1978). We have found error where the State introduced evidence of the character or reputation of the deceased or other evidence outside the aggravating circumstances. *See, e.g.*, *Willie v. State*, 585 So. 2d 660 (Miss. 1991); *Stringer v. State*, 500 So. 2d 928 (Miss. 1986); *Wiley v. State,* 484 So. 2d 339 (Miss. 1986); *Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

¶23. In the instant case, assuming that such comments constituted prosecutorial misconduct, we find that the jury would not have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *See Strickland*, 466 U.S. at 694. There was substantial evidence to support the sentence based on the aggravating factors; including the facts that the murder was committed during the course of a kidnaping, and he was a habitual offender. This issue is without merit.

*Failure to Object to Prosecutorial Misconduct*

¶24. Berry claims that, while the State used a theatrical performance and references to the Bible in an effort to influence the jury, defense counsel failed to object or request that the jury be admonished. We considered allegations of prosecutorial misconduct in *Berry II* and

8

found there to be no prosecutorial misconduct. *See Berry II*, 703 So. 2d at 280-81 (the use of Biblical reference in closing arguments is acceptable and counsel is afforded broad latitude).

¶25. Accordingly, this issue is procedurally barred in accordance with Miss. Code Ann. § 99-39-21 (2000).

*Failure to Request a Mistrial or Move for a Continuance*

¶26. During the original trial, both the defense and the State learned that Investigator Gore had received an anonymous letter suggesting that Bounds may have been murdered in a case of mistaken identity. Berry claims that counsel was ineffective in failing to request either a continuance or mistrial after this discovery and that such failure waived review of the evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (quoted with favor in *Smith v. State*, 500 So. 2d 973, 976 (Miss. 1986) ("the suppression by the State of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). This rule encompasses impeachment evidence as well as exculpatory material. *Malone v. State*, 486 So. 2d 367, 368 (Miss. 1986) (citing *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

¶27. Following the acknowledgment of the letter, defense counsel questioned Gore regarding, inter alia, its contents and whether the allegations were further pursued. Defense counsel then requested the letter be admitted into evidence. This request was followed by arguments regarding the letter's exculpatory nature and relevancy. After a fifteen minute break, when asked by the circuit judge, defense counsel declined to request a continuance.

9

Subsequently, the circuit court did not allow the letter to be entered into evidence. We affirmed this ruling, citing precedent on discovery violations, including **Box v. State**, 437 So. 2d 19 (Miss. 1983). **Berry I**, 575 So. 2d at 10. We found that Berry had waived review of the issue because trial counsel did not request a continuance. **Id.**

¶28.    We have set out guidelines for trial judges to follow when dealing with discovery violations. The guidelines include:

> 1)    Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
>
> 2)    *If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes waiver of the issue.*
>
> 3)    If the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

**Ramos v. State**, 710 So. 2d 380, 385 (Miss. 1998) (emphasis added). (*See also* **Russell v. State**, 789 So. 2d 779, 785 (Miss. 2001)).

¶29.    We find that this issue is without merit. First, counsel, upon discovery, sufficiently familiarized himself with the letter and determined that the lack of opportunity to prepare did not prejudice the defense. Second, Berry fails to demonstrate or allege how a lack of an opportunity to prepare actually prejudiced his defense. Moreover, the decision not to request a continuance or a mistrial falls within the ambit of trial strategy.

10

*Failure to Develop and/or Present Effective Mitigation Evidence*

¶30.    Berry argues that counsel failed to call family members to testify and failed to call social worker Hope Stone to testify, but instead, relied solely on professional witnesses. This issue is without merit.

¶31.    Berry states that, by relying on professional witnesses, counsel overlooked an abundance of evidence that family members could have provided. He claims that but for this failure there was a reasonable probability that the result of the proceedings would have been different. *See Burns*, 813 So. 2d at 673.

¶32.    On resentencing, the defense presented three witnesses:  Dr. Paul Blanton, Hope Stone, and Lewis M. Tetlow. Their testimony is discussed in greater depth under Issue IX, supra.

¶33.    Berry fails to cite support for his claim that reliance on professional witnesses may serve as grounds for a claim of ineffective assistance of counsel. Instead, he presents numerous affidavits from family and friends who discuss their opinions and knowledge of his mental problems and personal troubles. Nevertheless, the argument fails to show how counsel's performance was deficient. We find that, by presenting three professional witnesses and emphasizing Berry's mental and personal problems, counsel sought to invoke sympathy from the jury and prove that Berry lacked the capacity to appreciate his actions. Therefore, there is no indication that counsel conducted himself outside the professional norms.

## II.    ALLEGED PROSECUTORIAL MISCONDUCT.

¶34. Berry raises many of the same claims for prosecutorial misconduct that were addressed in **Berry II**. At that time, we held that "[h]aving reviewed each of his allegations, we find no single or cumulative error warranting reversal of Berry's sentence. The prosecutor's conduct was not such that it deprived Berry of a fundamentally fair trial." **Berry II**, 703 So. 2d at 282 (citations omitted). This claim is barred pursuant to Miss. Code Ann. § 99-39-21 (2000).

### III. WHETHER THE STATE WITHHELD EXCULPATORY EVIDENCE.

¶35. Berry claims that the State committed a **Brady** violation by withholding the results of a DNA test, which he claims was exculpatory. Because the results were not exculpatory, this issue is without merit.

¶36. During the original trial, the State presented as a witness Deborah K. Haller, a forensic toxicologist with the state crime lab. On cross-examination, when asked whether DNA testing had been conducted, Haller responded affirmatively that, at the time of the trial, testing was still being conducted, effectively preventing her from testifying as to the results.

¶37. Berry claims that he failed to receive the results even after he requested production in preparation for resentencing. The State responds that, because it was previously determined during the original trial, guilt was not at issue during resentencing. With a copy of the report accompanying its brief, the State emphasizes that the results conclusively showed that the blood on Berry's tennis shoe was indeed that of the victim.

12

¶38. Though it is unclear why the State failed to produce a copy of the report, such failure does not warrant an evidentiary hearing. Berry fails to show how the State's failure deprived him a fundamentally fair trial during resentencing.

### IV. WHETHER THE VERDICT AT RESENTENCING WAS IN PROPER FORM.

¶39. Berry claims that Miss. Code Ann. § 99-19-103 requires a jury to find the aggravating factors beyond a reasonable doubt, and that the verdict from resentencing was in violation because it failed to state such explicitly.[3] Because this issue was not raised in the direct appeal following resentencing, this issue is procedurally barred pursuant to Miss. Code Ann. § 99-39-21 (2000).

---

[3] On resentencing, the verdict provided, inter alia, that:

Next, We, the jury, unanimously find that the aggravating circumstance(s) of:

1. The defendant, Earl Wesley Berry, committed this offense while he was under a sentence of imprisonment.

2. The defendant, Earl Wesley Berry, was previously convicted of a felony involving the use or threat of violence to the person.

3. That the capital murder was committed while the defendant was engaged in the commission of the crime of kidnaping.

4. The capital murder was especially heinous, atrocious, and cruel.

are sufficient to impose the death penalty and there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we unanimously find that the defendant, Earl Wesley Berry, should suffer death.

13

¶40.    Procedural bar notwithstanding, our decision in ***Williams v. State***, 684 So. 2d 1179

(Miss. 1996), is directly on point.  Section 99-19-103 provides, in part:

> The statutory instructions as determined by the trial judge to be
> warranted by the evidence shall be given in the charge and in
> writing to the jury for its deliberation.  *The jury, if its verdict be*
> *a unanimous recommendation of death, shall designate in*
> *writing, signed by the foreman of the jury, the statutory*
> *aggravating circumstance or circumstances which it*
> *unanimously found beyond a reasonable doubt.*

(emphasis added).  We held that, while the jury is required to find the existence of each

aggravating circumstance beyond a reasonable doubt, "there is no authority for the

proposition that the jury must actually write the words "beyond a reasonable doubt" in its

verdict."  ***Williams***, 684 So. 2d at 1208.

¶41.    "This Court has held on numerous occasions that when a trial court instructs the jury,

it is presumed the jurors follow the instructions of the court."  ***Id.*** at 1209; *see also*

***Crenshaw v. State***, 520 So. 2d 131 (Miss. 1988); ***McFee v. State***, 511 So. 2d 130 (Miss.

1987); ***Johnson v. State***, 475 So. 2d 1136 (Miss. 1985).

¶42.    This issue is without merit.

> ### V.    WHETHER IT WAS ERROR FOR THE SENTENCING COURT NOT TO ALLOW BERRY TO ATTACK THE VALIDITY OF HIS CONFESSION.

¶43.    The decision to admit Berry's confession was affirmed in the direct appeals following

both the first trial and resentencing.  *See **Berry I***, 575 So. 2d at 8; ***Berry II***, 703 So. 2d at

291.  Seemingly, Berry takes issue with the resentencing court's decision not to allow him

14

the opportunity to attack the confession or to argue to the jury how it was procured. Berry's argument is difficult to follow, but misses much of the issue.[4]

¶44. This issue seems to concern a defendant's ability, during resentencing, to rebut evidence which was previously found admissible during the guilt phase. Thus, Berry claims that, by allowing the confession to be admitted unrefuted, the resentencing court violated his Fifth, Sixth and Fourteenth Amendment rights. Because Berry's argument is based on such constitutional provisions, the application of the procedural bar is avoided.

¶45. Citing **Berry I** and **Berry II**, the State counters that this contention is barred under both res judicata and Miss. Code Ann. § 99-39-21(2000). *See **Holland v. State***, 705 So. 2d 307, 321-29 (Miss. 1997) (On appeal from a resentencing trial for capital murder, the issue of guilt is res judicata and cannot be relitigated.) In **Holland**, a plurality of the Court considered this issue extensively and held that it was not an error to prevent a defendant, on resentencing, from presenting evidence or arguing residual doubt as to the validity of his conviction. *Id*. at 327.

¶46. Berry does not argue how or why he sought to controvert the confession and how such would have been relevant to his case in resentencing. Instead, he leaves it for us to divine his purpose or whether it was in an effort to advance his case for mitigation. Generally, "[d]efendants should be given broad latitude in introducing mitigating circumstance evidence restricted only by the requirement that the evidence must be relevant." **Davis v. State**, 512 So. 2d 1291, 1293 (Miss. 1987). Likewise, in **Skipper v.**

---

[4] Most of his argument is devoted to issues of its admissibility, which at this point is certain.

*South Carolina*, 476 U.S. 1, 106 S. Ct. 1699; 90 L. Ed. 2d 1 (1986)), the Supreme Court stated that a defendant must be allowed to rebut or defend against evidence introduced against himself. *Accord. in Holland*, 705 So. 2d at 324 .

¶47.   Another case on point is *Atkins v. Commonwealth*, 534 S.E.2d 312(Va. 2000), *rev'd on other grounds, Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).  In the direct appeal following resentencing, Atkins argued that the resentencing court improperly prevented him from questioning the investigator about his confession. 534 S. E. 2d. at 314.  Based on such, the court inhibited the jury's consideration of mitigating evidence.  *Id*. at 315.  Atkins claimed that such information was relevant to issues of his remorse and cooperation with law enforcement authorities, both of which are proper subjects of mitigating evidence.  *Id*.  Rejecting his argument, the Virginia Supreme Court held that the information that Atkins sought to elicit would have improperly raised questions of his guilt and that a defendant is not allowed to argue or present evidence of "residual doubt" at a new sentencing hearing.  *Id*. at 315-16.

¶48.   This issue is without merit.

> **VI.   WHETHER THE JURY'S ABILITY TO CONSIDER MITIGATING EVIDENCE WAS LIMITED BY JURY INSTRUCTIONS AND THE STATE'S CLOSING ARGUMENT.**

¶49.   First, Berry claims that the sentencing instructions prevented the jury from considering all the evidence presented regarding his mental problems.  He recognizes that we considered this issue in *Berry II*, but argues that its review was flawed because we placed too much reliance on the catchall instruction and should reconsider the catchall in light of

16

***Penry v. Johnson***, 532 U.S. 787, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (***Penry II***); and because we misapplied ***Blystone v. Pennsylvania*** 494 U.S. 299, 110 S. Ct. 1078, 108 L. Ed. 2d 255 (1990), which is distinguishable from the instant case. The State argues that the matter is procedurally barred.

¶50. In ***Berry II*** we considered whether the jury instructions limited consideration of his mental state. We dismissed this issue citing the inclusion of the catchall provision and the fact that defense counsel argued exhaustively to the jury that they should not impose the death sentence due to the "extenuating circumstances relating to Berry's mental and emotional state." ***Berry***, 703 So. 2d at 287.

¶51. Berry argues that the issue in ***Blystone*** was whether Pennsylvania's capital statute violated the Eighth Amendment. He argues that any reliance on the majority's discussion regarding instructions or catchall provisions is misplaced because it was not directly at issue. For this point, he cites the Justice Brennan's dissent in ***Blystone***. 494 U.S. at 316 n.5. Such claims regarding our analysis from ***Berry II*** should have been raised on motion for rehearing and is therefore procedurally barred. The analysis now shifts to the issue regarding the closing arguments by the State and the Supreme Court's holding in ***Penry II.***

¶52. Second, Berry argues the State misled the jury because it made the jury believe that, because he was competent to stand trial, all other evidence should not be considered; and that there was a heightened standard for mitigating evidence. The State's closing may have confused jurors in regards to evidence of mental and emotional problems. The State argued, *inter alia*, that: ". . . the bottom line, [Berry is] competent to stand trial, competent to know right from wrong, in his mind competent to be executed. . . ." In doing so, the State argued

17

in unison issues of insanity, competency, and mental retardation. The State argued that, because he knew the difference between right and wrong and because he was competent to stand trial, Berry was competent under the law to be executed. As noted later in the discussion of mental retardation, *supra,* competency, mental retardation, and insanity are distinct principles that are not used interchangeably. Berry claims that the decisions from *Penry I* and *Penry II* support his position. However, these two cases do not support Berry's claim regarding the State's closing.

¶53. In *Penry I*, the Supreme Court considered whether the jury instructions during capital sentencing allowed the jury the ability to properly consider the mitigating evidence of the defendant's mental retardation and childhood abuse. *Penry v. Lynaugh,* 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) (*Penry I)*. The Court ruled that in a capital murder trial the jury should be able to "consider and give effect to [a defendant's mitigating] evidence in imposing sentence." *Id.*

¶54. In *Penry II*, the Supreme Court considered whether on resentencing the state court complied with its holding from *Penry I*. Finding that it did not, the Supreme Court stated that instructions that "mere[ly] mention" or instruct the jury "to consider" mitigating circumstances do not satisfy the Eighth amendment. *Penry II*, 532 U.S. at 797. The Court found the sentencing instructions to be *internally contradicting*, *id*. at 798, and suggested that the contradiction may be resolved by considering that instructions in the light of all that had taken place at the trial (i.e., comments by the court or either side) or with the presence of a more clearly drafted catchall instruction on mitigating evidence. *Id*. at 803-04. However, without such, the Court held that a "reasonable juror could well believe that there

18

was no vehicle for expressing their view [that the defendant] did not deserve to be sentenced to death based upon his mitigating evidence." *Id*. at 804.

¶55. Considering how the instructions may have been clarified, the Supreme Court stated, "Moreover, even if we thought that the arguments of defense counsel could be an adequate substitute for statements of the law by the court, . . . the prosecutor effectively neutralized defense counsel's argument, . . . by stressing the jury's duty "[t]o follow your oath, the evidence and the law." *Id*. at 802 (citation omitted). Berry maintains that similarly, the State's closing argument effectively neutralized defense counsel's closing argument. The instant case is easily distinguishable from *Penry II*, which is therefore not applicable, because there is no alleged internal contradiction with the instructions presently at issue.

¶56. Post-conviction review based on the jury instructions and the State's closing argument is denied. Though we are concerned with the State's interchangeable use of the principles of mental retardation, competency and insanity, this alone does not warrant review.

### VII. WHETHER THE AGGRAVATING FACTORS ELEVATING A CHARGE TO A CAPITAL OFFENSE MUST BE INCLUDED IN THE INDICTMENT.

¶57. This is one of several cases before the Court raising this same issue. Two articles have been helpful: Janice L. Kopec, *Ring v. Arizona 122 S. Ct. 2428 (2002) Allen v. United States 122 S. Ct. 2653 (2002)*, 15 Cap. Def. J. 143 (2002), and Simon Cantarero, *Who Makes the Call on Capital Punishment? How Ring v. Arizona Clarifies the Apprendi Rule and the Implications on Capital Sentencing*, 17 BYU J. Pub. L. 323 (2003).

¶58. The indictment issued against Berry alleged in part:

> [That Earl Berry]... willfully, unlawfully, feloniously and without the authority of law kill and murder Mary Bounds, a human being, while engaged in the commission of the crime of kidnaping of Mary Bounds by forcibly seizing and confining Mary Bounds, without lawful authority, with the intent to cause her to be secretly confined or imprisoned against her will, in violation of Section 97-3-19(2)(e) of the Mississippi Code of 1972, Annotated, as amended... indicted as an habitual criminal as under Section 99-19-81...

He claims that there can be no dispute that the indictment lacks allegations of aggravating circumstances.[5] But the indictment did present the aggravating circumstances on which the State intended to rely on and satisfied the additional state notice requirement in capital matters. *See* Miss. Code Ann. § 99-17-20 (2000). Despite this, we will analyze the issue assuming Berry's interpretation of the indictment.

¶59. The decisions in ***Ring*** and ***Apprendi*** did not address state indictments, and ***Jones*** was based on a federal criminal statute and the Fifth Amendment, which is not applicable to the states. Berry argues that his indictment was unconstitutional because it failed to include and specify the aggravating factors used to sentence him to death. For support, he relies on ***Jones v. United States***, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999); ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S. Ct. 2348. 147 L. Ed. 2d 435 (2000); and ***Ring v.***

---

[5] Because his claim is factually vague as to what factors where included in the jury instruction but were left out of the indictment, we note that the instruction's four aggravating factors include: 1) Berry committed the crime while under a sentence of imprisonment; 2) he was previously convicted of a felony involving the use or threat of violence to the person; 3) the capital offense was committed while the defendant was engaged in the commission of the crime of kidnaping; and 4) the capital offense was especially heinous, atrocious or cruel.

*Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 ( 2002).  Because ***Ring*** is an intervening decision, this issue avoids the procedural bar.

¶60.    In ***Jones****,* the Supreme Court was asked to decide whether the federal carjacking statute provided for three distinct offenses or a single crime with a choice of three maximum penalties, two of which were dependent on sentencing factors exempt from the requirements of charge and jury verdict.  *Jones*, 526 U.S. at 229.  Finding that it provided for three distinct offenses with differing punishments based on the degree of violence employed or physical harm inflicted, the Court held that the aggravating factors necessary to trigger the escalating penalties fell within the province of the jury.  *Id*. at 251-52.  Succinctly, the Court stated:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt.

*Id.*, at 243 n.6 (emphasis added).

¶61.    In ***Apprendi***, the defendant was arrested after he fired several shots into the New Jersey home of an African-American family.  *Apprendi*, 530 U.S. at 469-70.  Subsequently, he was indicted on numerous state charges, including second-degree possession of a firearm.  *Id*.  He then was convicted of, inter alia, second-degree possession of a firearm, an offense carrying a maximum penalty of ten years.  On the prosecutor's motion, the sentencing judge found by a preponderance of the evidence that the crime had been motivated by racial animus.  As such, it triggered the state "hate crime enhancement" resulting in the judge sentencing the defendant to twelve years, two years over the maximum but for the enhancement.  *Id*.

¶62.    On certiorari, Apprendi argued, inter alia, that due process required that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt.  Relying in part on **Jones**, the Supreme Court agreed, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  **Apprendi**, 530 U.S. at 490.

¶63.    Relevant to the instant appeal, the **Apprendi** Court noted, "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . .  We thus do not address the indictment question separately today."  **Id**. at 477 n.3.

¶64.    Finally, in **Ring v. Arizona**, the Supreme Court considered whether the Arizona capital sentencing regime was still constitutional following its holding from **Apprendi**.  Arizona law provided that after the defendant was convicted by a jury, the trial judge was required to conduct a hearing and make the final determination by a preponderance of evidence as to the presence of aggravating factors required for the imposition of the death penalty.  **Ring**, 536 U.S. at 587.[6]  Finding it unconstitutional, the Court stated:

---

[6] As recently as 1990, the Supreme Court reviewed Arizona's sentencing scheme in **Walton v. Arizona**, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), and held that the sentencing scheme was compatible with the Sixth Amendment because additional facts found by the judge qualified as *sentencing considerations*, not as elements of the offense of capital murder.  **Walton**, 497 U.S. at 649.

However, the Court's reasoning in **Apprendi** was irreconcilable with the holding from **Walton** and because the Court did not expressly overrule **Walton** in its decision from **Apprendi**, the Court granted certiorari to address the conflict.  **Ring**, 536 U.S. at 588-89.

[W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S. at 647-649, 110 S. Ct. at 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530 U.S. at 494 n.19, 120 S. Ct. 2348, the Sixth Amendment requires that they be found by a jury.

* * *

"The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. . . . If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it."

The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death. We hold that the Sixth Amendment applies to both.

*Ring*, 536 U.S. at 609 (citation omitted).

¶65. The practical function of the *Ring* decision was only to clarify the fact that in the "functional equivalent" doctrine, there was no distinction in capital matters and that under the Sixth Amendment any fact that is such must be found by a jury.

¶66. In the instant appeal, Berry argues that, because the *Ring* relied in part on the reasoning from *Jones*, which was subsequently relied on in *Apprendi*, states are now obligated to comply with its holding with the indictment requirement. We disagree for two reasons, which the *Ring* Court conveniently noted in footnote number four of the majority opinion. In it, the Supreme Court stated:

23

> Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. . . . Finally, *Ring does not contend that his indictment was constitutionally defective. See Apprendi*, 530 U.S., at 477, n. 3, 120 S. Ct. 2348 (*Fourteenth Amendment "has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'"*).

*Ring*, 536 U.S. at 597 n.4 (emphasis added).

¶67. First, like *Apprendi*, the *Ring* Court specifically noted that its opinion did not address the constitutionality of the indictment; and therefore, it never spoke to whether states are required provide such charges in their indictments.

¶68. Second, Berry's argument requires reading together the decisions from *Jones*, *Apprendi*, and *Ring*. However, *Apprendi* and *Ring* were based on the guarantees contained in the Sixth Amendment. *Jones* addressed a federal statute and was based on, in addition to the Sixth Amendment's notice and jury trial guarantees, the due process clause of the Fifth Amendment, which does not apply to the states. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959); *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884). Thus, Berry's argument is without merit.

¶69. The State cites the same reasons why we should reject Berry's argument. In addition, the State argues that even if the *Apprendi* and *Ring* cases were applicable, they could not be applied retroactively. Because Berry's argument is without merit, analysis of potential retroactivity is omitted.

## VIII. WHETHER MISSISSIPPI'S CAPITAL SENTENCING SCHEME IS DISTINGUISHABLE FROM ARIZONA'S CAPITAL SENTENCING SCHEME.

24

¶70.    Berry argues that, although Mississippi's capital sentencing regime is not identical to the Arizona regime, Mississippi's scheme is sufficiently similar to render it unconstitutional under *Ring*. Mississippi's capital scheme is distinct from Arizona's in the single, most relevant respect under the *Ring* holding: that it is the jury which determines the presence of aggravating circumstances necessary for the imposition of the death sentence. *See* Miss. Code Ann. § 99-19-101 (2000).

¶71.    Likewise, the *Ring* court considered Mississippi's scheme to be part of a majority of states who have responded to its Eighth Amendment decisions and require that juries make the final determination as to the presences of aggravating circumstances. *Ring*, 536 U.S. at 608 n.6.

¶72.    This issue is without merit.

### IX.    WHETHER AN INDICTMENT FOR CAPITAL MURDER MUST ALLEGE ALL OF THE STATUTORY ELEMENTS OF THE CRIME.

¶73.    Berry's argument is based on the holdings of two United States District Courts: "Although the *Ring* decision explicitly did not discuss whether a defendant was entitled to grand jury indictment on the facts that, if proven, would justify a sentence of death, . . . the clear implication of the decision, resting as squarely as it does on *Jones*, is that in a federal capital case the Fifth Amendment right to a grand jury indictment will apply." *United States v. Fell*, 217 F. Supp. 2d 469, 483 (D. Vt. 2002). *Fell* is not a federal capital case, and there is nothing to show that this Fifth Amendment right is applicable to a state capital case. In any event, the Second Circuit has vacated the district court judgment in *Fell*. *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004). Berry also cites *United States v. Lentz*, 225 F.

25

Supp. 2d 672 (E.D. Va. 2002), which makes the same finding, but once again deals with the Federal Death Penalty Act, or FDPA.

¶74.   Berry also  relies on the United States Supreme Court decision of *Allen v. United States*, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 830 (2002).  In a memorandum decision, the Supreme Court stated the following:  "The judgment [in *Allen*] is vacated and the case is remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of *Ring v. Arizona*."  This decision is confusing to this writer for two reasons:  (1) *Allen* is a federal capital case while *Ring* is a state capital case and (2) the holding in *Ring* was that only a jury could find an aggravating circumstance necessary for the imposition of the death penalty.  This issue was not considered in *Allen* because under the Federal Death Penalty Act, a jury must find the aggravating factors.  *See United States v. Allen*, 247 F.3d 741, 758 (8th Cir. 2001) ("The framework of the FDPA passes constitutional muster because it does not allow imposition of the death penalty unless the jury first finds at least one *statutory* aggravating circumstance.")

¶75.   One issue raised in *Allen* was the issue Berry raises here, that of his indictment being defective because it did not contain the aggravating factors.  The Eighth Circuit in *Allen* found that Allen's indictment was not defective even though it did not contain the aggravating factors.  If this is the basis on which *Allen* is being reversed, it seems odd to cite *Ring* to do it.   The question of what an indictment must contain in a state capital case was not before the *Ring* Court.  In *Apprendi*, the Supreme Court stated that the Fifth Amendment right to indictment had never been applied to the states through the Fourteenth Amendment.

26

The Supreme Court has not found that state capital defendants have a constitutional right to have all aggravating circumstances listed in their indictments.

¶76. The State argues that the decision in *Ring* does not apply retroactively, citing *Tyler v. Cain*, 533 U.S. 656, 663, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001), where the Court stated: "We thus conclude that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." We agree. The Supreme Court has recently held that *Ring* announces a procedural rule and does not apply retroactively to death penalty cases already final on direct review. *Schriro v. Summerlin*, 542 U.S. ___, 2004 WL 1402732 (June 24, 2004).

## X. PROPORTIONALITY.

¶77. Berry claims that he is entitled to a proportionality review as provided by Miss. Code Ann. § 99-19-105 (2000) and that such is required under the Eighth Amendment of the Constitution.[7] Because this issue was considered on direct appeal following resentencing, this issue is barred pursuant to Miss. Code Ann. § 99-39-21 (2000). *See Berry II*, 703 So.2d at 293-94.

## XI. MENTAL RETARDATION.

¶78. Berry raises two issues regarding mental retardation: 1) who determines mental retardation under *Atkins*; 2) whether he is mentally retarded under *Atkins*.

*Who determines whether a defendant is mentally retarded.*

---

[7]However, "[i]n *Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984), the Supreme Court of the United States held that such a review is not constitutionally mandated, being exclusively a question of state law." *Gray v. State*, 472 So. 2d 409, 420 (Miss. 1985).

27

¶79.   Berry devotes a significant part of his argument discussing what role judges and juries should play in determining whether a defendant is mentally retarded.  We recently addressed this issue in *Russell v. State*, 849 So. 2d 95, 145-49 (Miss. 2003), but the briefs in this matter were filed prior to *Russell*.

¶80.   In *Russell*, the petitioner argued that after meeting his burden of production, the determination of whether he is mentally retarded must be submitted to the jury and proven by the State beyond a reasonable doubt.  *Id*. at 146.  Rejecting this position, we stated, "We find that not being mentally retarded is not an aggravating factor necessary for imposition of the death penalty, and [therefor] *Ring* has no application to an *Atkins* determination." *Id.* at 148.  Our reasoning is established on the fact that *Ring*/*Apprendi* and *Atkins* discuss issues under the Sixth and Eighth Amendments, respectively.  *See also Chase v. State*, 873 So.2d 1013 (Miss. 2004).

¶81.   We reject Berry's argument and cite the recent decision in *Russell*.

> *Whether Berry is Entitled to an **Atkins** Hearing.*

¶82. At the outset, we note that we previously considered Berry's mental capacity in **Berry II**. *See **Berry II***, 703 So. 2d at 293-94.[8] However, because he was sentenced pre-***Atkins***, this issue was not scrutinized under the standards now imposed under ***Atkins***.

¶83. In support of his claim that he is entitled to an ***Adkins*** hearing, Berry relies on affidavits from family members, a report from a social worker, testimony of psychologist, and in addition to other proof. Because the issue of his mental capacity and competency were prevalent throughout his trials and appeals, he also cites the record from the previous appeals. The State relies heavily on the testimony of Dr. Charlton Stanley and Dr. Paul Blanton.

¶84. Testifying during the sentencing phase of the original trial, Dr. Charlton Stanley, a forensic psychologist, testified that Berry had an IQ of 83, which classified him in the dull normal range of intellectual function. Though Dr. Stanley found that he suffered from organic brain damage, he testified that Berry was not mentally retarded.

¶85. Next, there is the evidence and testimony that was presented during resentencing. At this time, Berry called Dr. Paul Blanton, a clinical psychologist, who testified that Berry: 1)

---

[8]At that time, Berry claimed the death sentence was disproportionate considering he was "a paranoid schizophrenic functioning with brain damage and an impaired intellectual capacity" the death sentence was disproportionate. *Id*. at 293. Relying on ***Edwards v. State***, 441 So. 2d 84, 93 (1983), Berry argued that his sentence ought to be vacated. *Id*. We noted that a "diagnosis of paranoid schizophrenia does not necessarily prohibit the imposition of the death penalty." *Id*. at 293. Rejecting the claim that his circumstances closely paralleled those from ***Edwards***, we distinguished his claim for several reasons, including: 1) there was expert testimony that he was competent to be executed; 2) the evidence was neither overwhelming nor uncontradicted; 3) he had never been diagnosed, treated, or institutionalized for his afflictions prior to killing Mary Bounds. *Id*.

29

had full scale IQ of 76 (borderline intellectual functioning), and how such an IQ would affect him; 2) suffered from significant frontal lobe impairment; and 3) was not mentally retarded.

¶86.    Second to testify was social worker Hope Stone, who testified regarding a report in which he outlined significant personal and family background information on Berry. The report showed that Berry's father suffered from mental illness and was treated at Whitfield; Berry had demonstrated poor educational performance; Berry had sustained several head traumas; Berry was treated at Whitfield in 1981; and that, from August 1987 thru November 1987, he was treated for paranoid schizophrenia at Pines Aftercare Program in Starkville.

¶87.    Testifying last was Dr. Lewis Tetlow, a clinical psychologist, who diagnosed Berry as suffering from paranoid schizophrenia.

¶88.    Aside from the testimony, Berry cites several affidavits from family and friends swearing, *inter alia*, that: 1) they had long known of that he was "slow" and lacked the appropriate mental capabilities for someone his age; 2) attended special educational classes; 3) as a child he was hospitalized for cottonseed oil poisoning.

¶89.    To show that his intellectual deficiencies were documented prior to age 18, a standardized tests scores from January 1972 (13 years old) were provided. The report indicates that his I.Q. was 72.[9]

¶90.    Last, there are the notes and records from staff at the Mississippi Department of Corrections hospital at Parchman following suicide attempts in 1981 and 1985.[10] During

---

[9] The State discounts the results by arguing that report is not certified.

[10] Apparently, Berry has attempted suicide on several occasions.

October of 1981, Berry was hospitalized after attempting suicide (swallowed razor blades). He was subsequently placed in the psychiatric wing. Staff notes during this period indicate that they considered him mentally retarded.

¶91. Again in April of 1985, Berry was admitted to the hospital after attempting suicide and, again the staff's notes indicate that they considered him to be mentally retarded.

¶92. We recently addressed the standard for determining whether a defendant is mentally retarded as to render him or her ineligible for capital punishment. *See Chase v. State*, 873 So. 2d at 1029. If, on post-conviction review, a defendant produces evidence that he or she has scored 75 or below on an IQ test, we are to grant an evidentiary hearing for a mental retardation determination.

¶93. *Chase* requires that, in order to merit an *Atkins* hearing, the defendant or petitioner must produce the affidavit of a qualified expert stating that the defendant or petitioner is mentally retarded. Here, other than Dr. Blanton's testimony that Berry was probably not mentally retarded, there is no evidence in the record which would compel us to remand for an evidentiary hearing on the issue of mental retardation. *See Scott v. State*, ___ So. 2d ___ (Miss. 2004). This claim is without merit.

## XII. CUMULATIVE ERROR

¶94. Berry argues that post-conviction review be granted based on cumulative errors. *Stringer v. State*, 500 So. 2d 928, 946 (Miss. 1986) (death sentence vacated in view of numerous "near-errors" which violated defendant's right to a fair trial).

¶95. After reviewing the record and considering the cumulative effect of any error or near error, we find that this issue is without merit.

## CONCLUSION

¶96. For these reasons, we deny Berry leave to seek post-conviction relief.

¶97. **APPLICATION FOR LEAVE TO FILE PETITION FOR POST-CONVICTION RELIEF DENIED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**