United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 24, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 06-70051

EARL WESLEY BERRY,

Petitioner - Appellant,

versus

CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
(1:04-CV328-D-D)

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

For a murder committed in late 1987, Earl Wesley Berry was convicted in Mississippi state court of capital murder and sentenced to death.  The district court denied habeas relief and a certificate of appealability (COA).  Berry seeks to appeal that decision.  In order to be able to do so, he requests a COA.  **COA DENIED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Mary Bounds was reported missing on 29 November 1987. A few days later, on 1 December, her vehicle was located in Houston, Mississippi. Inspection of the vehicle revealed spattered blood around the driver's side door. Mary Bounds' body was found nearby; she had been severely beaten. It was later determined that she died of head injuries from repeated blows.

Berry's confession provided the details of what transpired. On the evening of 29 November 1987, while driving through Houston in his grandmother's vehicle, Berry saw Mary Bounds near a church. As she was preparing to enter her vehicle, he approached, and hit, her and forced her into his vehicle. Berry then drove out of town.

Berry took Mary Bounds into a wooded area and ordered her to lie down, intending to rape her. Berry did not do so; he took her back to the vehicle, telling her they would return to town. Instead, Berry drove to another wooded area where they exited the vehicle. Mary Bounds pleaded with Berry, but he beat her with his fists and forearm. Afterwards, he carried her further into the woods and left her.

Berry drove to his grandmother's house, disposing of a pair of mismatched tennis shoes along the way. At his grandmother's house, he burned his bloodied clothes and wiped the vehicle he had used of any blood stains with a towel, which he threw into a nearby pond.

Berry's brother, who was at the house, witnessed some of this suspicious behavior. On 5 December 1987, he called investigators and told them what he had observed. The next day, Berry was arrested at his grandmother's home and soon confessed to the crime. Police found the mismatched tennis shoes Berry had discarded; in the above-referenced pond, they found a bloodied towel.

Berry was indicted for the murder and kidnapping of Mary Bounds, and as a habitual criminal, on 1 March 1988. In a bifurcated (guilt/innocence and punishment phases) jury trial (first trial), he was convicted, *inter alia*, of capital murder, in violation of Mississippi Code Annotated § 97-3-19(2)(e) (killing in connection with a kidnapping), and, on 28 October 1998, sentenced to death.

Berry appealed the conviction and sentence to the Mississippi Supreme Court. It affirmed the conviction but vacated the death sentence and remanded for resentencing, holding the jury instruction with regard to the "especially heinous, atrocious or cruel" aggravating circumstances, a condition required for a death sentence, failed to appropriately channel the jury's discretion. *Berry v. State*, 575 So.2d 1 (Miss. 1990) (*Berry I*).

Berry's resentencing trial began on 22 June 1992, after venue had been changed from Chickasaw to Union County, due to the nature and extent of the publicity surrounding the case. On 25 June, Berry was again sentenced to death. That sentence was appealed to

-3-

the Mississippi Supreme Court. It affirmed in part, remanding to the trial court to hold a hearing on whether the **Batson** test applied to the State's striking all black potential jury members in a case involving a white defendant. **Berry v. State**, 703 So.2d 269 (Miss. 1997) (**Berry II**).

On remand, the trial court held the **Batson** hearing and ruled: Berry failed to establish a *prima facie* case for discrimination; and the State's strikes were race-neutral. Berry appealed, and the Mississippi Supreme Court affirmed. **Berry v. State**, 802 So.2d 1033 (Miss. 2001) (**Berry III**). The Supreme Court of the United States denied review. **Berry v. Mississippi**, 537 U.S. 828 (2002).

On 20 December 2002, Berry requested post-conviction relief from the Mississippi Supreme Court. Among other claims, Berry sought relief for three of the five claims for which he now requests a COA. The state supreme court (state-habeas court) found one of those claims procedurally barred under Mississippi Code Annotated § 99-39-21 (state habeas law governing the procedural waiver of objections, defenses, and claims and *res judicata*), and one without merit. Concerning Berry's claim (based on two instances) for ineffective assistance of counsel (IAC) for which he requests a COA here, the state-habeas court found his claim concerning one instance procedurally barred and the claim concerning the other without merit. Habeas relief was denied. **Berry v. State**, 882 So.2d 157 (Miss. 2004) (**Berry IV**). The Supreme

-4-

Court of the United States again denied relief. ***Berry v. Mississippi***, 544 U.S. 950 (2005).

In October 2005, Berry requested federal habeas relief under 28 U.S.C. § 2254, presenting 12 claims. A year later, in a 64-page opinion, the district court denied relief. ***Berry v. Epps***, 2006 WL 2865064 (N.D. Miss. 5 Oct. 2006) (***Berry V***).

In order to be able to appeal that habeas denial, Berry requested a COA from the district court, pursuant to 28 U.S.C. § 2253(c), for the following five claims raised, and denied, in his federal habeas application: for his first trial, (1) the admission of his confession, and (2) the denial of his change-of-venue motion; and for his resentencing trial, (3) IAC, (4) prosecutorial misconduct, and (5) the admission of photograph and videotape evidence. Berry also claimed the district court should have considered his defense against the imposition of any procedural default with regard to claims raised in his habeas petition. (In response to assertions that some of his claims were unexhausted and procedurally defaulted, Berry claimed: there was "an absence of available State corrective process[es]", 28 U.S.C. § 2254(b)(1)(B)(i), or "circumstances exist[ed] that render[ed] [the State court corrective] process[es] ineffective to protect the rights of the applicant", 28 U.S.C. § 2254(b)(1)(B)(ii); and, but for these issues, his claims would be valid.)

The district court denied a COA. **Berry v. Epps**, 2006 WL 3147724, *1 (N.D. Miss. 2 Nov. 2006) (**Berry VI**). Therefore, in order to appeal the habeas denial, Berry must obtain a COA here. Berry seeks a COA for the same five claims for which a COA was denied in district court.

## II.

Berry's federal habeas application is subject to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). *See, e.g.,* **Penry v. Johnson**, 532 U.S. 782, 792 (2001). As noted, under AEDPA, in order for an appeal to be permitted from the denial of habeas relief on a claim, Berry must obtain a COA, from either the district court or this court. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1); **Slack v. McDaniel**, 529 U.S. 473, 478 (2000). Under AEDPA, a COA may *not* issue unless Berry makes a "substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see also* **Slack**, 529 U.S. at 483. This requires demonstrating "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". **Slack,** 529 U.S. at 483-84 (internal quotations and citations omitted).

In deciding whether to grant a COA, we are limited, *inter alia*, to a "threshold inquiry into the underlying merit" of Berry's

claims. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). This inquiry "does not require a full consideration of the factual or legal bases adduced in support of the claims"; instead, we are to conduct "an overview of the claims in the habeas petition and a general assessment of their merits". *Id.* at 336. Because a death penalty was imposed, any doubts about whether a COA should be granted will be resolved in Berry's favor. *E.g., Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

Concerning our mandated threshold-inquiry, in ruling on the habeas application, the district court was required by AEDPA to defer to the state court's resolution of questions of law, as well as mixed questions of law and fact, unless the state-court decision was "contrary to" or an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *see Hill v. Johnson*, 210 F.3d 481, 484-85 (5th Cir. 2000). A state-court decision is contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003). An *unreasonable* application of law differs from an *incorrect* application. *See, e.g., Williams v. Taylor,* 529 U.S. 362, 409-12 (2000). Consequently, under AEDPA,

-7-

federal courts may correct an erroneous application of law only if it is also unreasonable. *Id.*

Furthermore, in ruling on the application, the district court was required by AEDPA to defer to state-court factual findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings". 28 U.S.C. § 2254(d)(2). Those factual findings are "presumed to be correct"; Berry had the "burden of rebutting that presumption by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

As discussed, as he did in district court, Berry seeks a COA for each of the following five claims. First, at his first trial, because his testimony on whether he was afforded his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), conflicted with that of the State's witnesses, his confession should *not* have been admitted. Second, the trial court's refusal to change venue for that first trial, despite extensive pre-trial publicity, denied him his rights to trial by an impartial jury, in violation of the Sixth Amendment. Third, at his resentencing trial, his counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) because: he allowed the trial court to refer to Berry as a "habitual offender"; and he did *not* secure a meaningful review of certain conduct by the prosecutor. Fourth, for that trial, the prosecutor acted vindictively in denying him a plea

bargain and the district court failed to address this in its analysis. Fifth, at that resentencing trial, inflammatory photographs and videotape evidence denied him a fair trial. As a collateral claim, Berry asserts, as he did in district court, that certain of his other claims should *not* be procedurally defaulted because of asserted deficiencies in the State's post-conviction review process, in violation of 28 U.S.C. § 2254(b)(1)(B). (This is *not* a COA request because it does *not* concern a claim for the violation of a constitutional right. Instead, it is presented to establish cause to overcome procedural default on claims concerning such a right.)

At best, Berry's COA request is extremely cryptic and conclusory. Moreover, for each of the underlying five claims, he cites *no* authority for why he is entitled to a COA. Instead, at the start of his ten-page request, he simply cites general authority for when a COA should issue. In short, it is quite questionable that the request can be considered. *See* FED. R. APP. P. 28(a) (requiring an appellant's contention contain the reasons he deserves the requested relief with citation to the authorities, statutes, and parts of the record upon which he relies); *e.g., Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir.) (holding a petitioner who summarily recites a claim for relief without discussing its legal and factual basis, risks waiving it), *cert. denied*, 126 S. Ct. 1347 (2006). Nevertheless, we will consider his

request. Berry's counsel are cautioned that, in the future, such inadequate briefing may result in a COA request's *not* being considered.

## A.

As an initial matter, Berry claims the district court erred by not fully considering a memorandum attached as an exhibit (*Grayson* Memo) to his federal habeas petition. That memorandum was filed in **Grayson v. Epps**, 1:04 CV 708-B (S.D. Miss.). Pursuant to it, Berry maintains no procedural default should be asserted against any of his claims because of the claimed ineffective post-conviction review process, or the absence of any meaningful corrective process, in the State of Mississippi, as is required under 28 U.S.C. § 2254(b)(1)(B)(i) and (ii).

In district court, Berry asserted that, because of these claimed inadequacies, the court should reject any proposed procedural bars. That court held Berry waived this contention.

> [Berry] repeatedly directs the Court to the *Grayson* Memo in a blanket manner, offering no argument in support thereof, without citing any portion of it in the body or the petition or supporting memorandum, and without offering any explanation of how it is relevant to his case. [Berry]'s argument is conclusory and without requisite specificity or relevance to this petition ... [; and,] under the standards set forth by the AEDPA, the matter is waived.

**Berry V**, 2006 WL 2865064 at *5.

Berry's contention here has the same defect. He simply references the *Grayson* Memo without explaining how the state post-

conviction review processes were defective; he merely states "a review of said Memorandum makes clear how there was an absence of available State corrective process in [Berry's] case". Furthermore, Berry does *not* specify the type relief he seeks or what claims should be resurrected, instead stating: "This Court could decide all the issues differently that involved application of the Memorandum. Thus, the [COA] should issue". As held by the district court, because Berry has failed to brief this contention here, it is waived. *See, e.g., **Lookingbill v. Cockrell***, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, [this court] consider[s] it waived.").

## B.

As discussed, the conclusory COA request falls far short of showing entitlement to a COA for any claim. In any event, for each of the five claims for which Berry requests a COA, the district court's holding the state-court decision for each claim *not* unreasonable under AEDPA is *not* debatable among reasonable jurists, nor does any claim merit further development. Therefore, as developed *infra*, a COA is denied for each claim.

## 1.

Following his arrest, Berry gave a statement to investigators confessing to Mary Bounds' murder. Pre-trial, Berry moved to suppress that statement. For his first COA request, Berry contends: because he and the State's witnesses gave conflicting

-11-

testimony on whether he was given his *Miranda* warnings, reasonable jurists could differ as to the district court's ruling that the state-court decision (allowing admission of the confession) was *not* unreasonable under AEDPA.

At the two-day pre-trial suppression hearing in October 1988, Berry testified:  Officers advised him he could have an attorney; he requested one numerous times; and finally, he was given the opportunity to call his attorney but could not reach him on a Sunday.  Police Investigator Gore testified as follows.  Berry was advised of his *Miranda* rights prior to his arrest and before he was initially questioned at his grandmother's home.  Berry also asked for, and was given, the opportunity to speak to an attorney when he arrived at the jail.  When Berry was brought to the jail's office to call his attorney, however, he stated:  he no longer desired to contact an attorney; and he was willing to talk to investigators without an attorney's being present.  Officers again read Berry his *Miranda* rights, at which point Berry confessed to the crime and signed a statement regarding what transpired.  This testimony was supported by that of other Officers who were present at that time.

In denying the suppression motion, the trial court ruled:  the statement "was freely and voluntarily given; and the constitutional requirements [as to its admissibility] were met".  At the first trial, Investigator Gore read Berry's statement to the jury.

On direct appeal from that trial, the Mississippi Supreme Court affirmed the trial court's finding the statement was given voluntarily and ruled that, even if Berry had sufficiently invoked his right to counsel, he had "knowingly and intelligently" waived it. *Berry I*, 575 So.2d at 6.

At his resentencing trial, Berry's objection to the introduction of the statement was overruled. The claim was again presented to the Mississippi Supreme Court on appeal from that trial. In this instance, that court held it procedurally barred. *Berry II*, 703 So.2d at 290-91. (In the alternative, the court addressed the merits of the claim and found no error. *Id.*)

In his state-habeas petition, Berry took issue with the ruling at the resentencing trial *not* to allow him the opportunity to attack the confession or to argue to the jury how it was procured, essentially to rebut evidence during sentencing which had been found admissible at the first trial's guilt/innocent phase. The state-habeas court found: although defendants should be given broad latitude in introducing mitigating evidence during sentencing, Berry did *not* state how an attack on the confession would constitute such evidence. *Berry IV*, 882 So.2d at 168. Furthermore, the state-habeas court ruled Berry was *not* entitled to argue "residual doubt" during the resentencing trial as to evidence deemed admissible during his first trial. *Id.*

-13-

In denying relief on this claim, the district court noted: Berry refused to call an attorney when law enforcement officials attempted to satisfy his request to speak with one; and Berry waived his right to counsel when he agreed to give a statement without counsel's being present. *Berry V*, 2006 WL 2865064 at *8-9. The district court held: "[T]he giving of *Miranda* warnings and subsequent waiver of the right to counsel meets the burden of making [Berry] aware of his right, and the possible consequences of for[e]going that right, thereby making the waiver sufficiently knowing and intelligent". *Id.* at *9. Pursuant to AEDPA, it held: because the state-habeas court's factual findings were reasonable and its decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, Berry was *not* entitled to federal habeas relief.

For COA purposes, Berry notes that the state court, *not* the jury, decided admissibility of his confession, and claims: that court's factfinding is *not* entitled under AEDPA to the deference accorded factfinding by a jury; and, at the suppression hearing, the state court should have believed his testimony over that of the Officers. To the contrary, the Mississippi Supreme Court, both on direct appeal and as the state-habeas court, found sufficient evidence to support the trial court's decision; as noted, Investigator Gore's testimony was supported by that of other

Officers who testified that Berry knowingly and voluntarily waived his right to counsel for this claim.

Generally, under AEDPA, "[a] credibility determination by the state ... court ... is afforded deference". *Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006); *Miller-El*, 537 U.S. at 340 ("A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. Where 28 U.S.C. § 2254 applies, our habeas jurisprudence embodies this deference."). Berry fails to satisfy the standard for obtaining a COA for this claim.

2.

Prior to his first trial, Berry moved for a change of venue due to claimed extensive pretrial publicity and the prominence of the victim in the county, contending not doing so would be violative of the Sixth, Eighth, and Fourteenth Amendments. At the 2 September 1988 hearing on the motion, 11 community witnesses testified Berry could get a fair trial. On cross-examination of the three witnesses presented by Berry, the local-newspaper publisher admitted Berry would receive a fair trial; the other two admitted they were related to Berry by marriage.

The trial court ruled no evidence warranted a venue change. It also denied Berry's motion for a county-wide venire, pursuant to Mississippi Code Annotated § 13-5-21, because venire members from

the court's judicial district were *not* prejudiced and would be able to serve.

On appeal, the Mississippi Supreme Court found no abuse of discretion in the denial of the change-of-venue motion. ***Berry I***, 515 So.2d at 9. As noted, venue was changed for the resentencing trial. *See **Berry II***, 703 So.2d at 273. (Although he did *not* seek federal habeas relief on this point, Berry claimed in his state-habeas petition that he received IAC due to *not* obtaining a venue change for the first trial. The state-habeas court applied the well-established two-part test in ***Strickland***, 466 U.S. at 687: counsel's performance must be deficient; and that deficiency caused prejudice. It held that, even assuming deficient performance, there was no prejudice because such performance did *not* deprive Berry of a fair trial. ***Berry IV***, 882 So.2d at 162.)

In his federal habeas application, Berry claimed: due to the community atmosphere, he was deprived of his right to a fair and impartial jury by the trial court's denial of his change-of-venue motion. In support, Berry asserted: the community interest generated substantial discussion about his crime, as did many newspaper articles; extraneous information influenced the jury's verdict; and the trial court did *not* question prospective jurors individually, leading to situations in which a venire member answered questions in the same way as had other members. In the

alternative, Berry contended he was entitled to a county-wide venire.

The district court held: because Berry did *not* show either inflammatory pretrial publicity or juror bias, *see* **Busby v. Dretke,** 359 F.3d 708, 725-726 (5th Cir. 2004), he did *not* suffer any prejudice; therefore, under AEDPA, the Mississippi Supreme Court was *not* unreasonable in holding there was no abuse of discretion in the trial court's denying the motion. **Berry V**, 2006 WL 2865064 at *12. It also held the trial court's denying a county-wide venire was a matter of state law, *not* subject to federal habeas review, citing **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991). **Id.** Finally, the court ruled Berry's contention about the trial court's failure to question jurors individually had no legal or factual support. **Id.**

Berry seeks a COA for his claim that the Mississippi Supreme Court failed to consider fully the preconceived notions held by venire members and the effect that talking about the crime had on such members. Berry fails to meet the standard for obtaining a COA because he fails to show reasonable jurists would question the district court's rulings. In that regard, in district court, Berry did *not* demonstrate pretrial publicity was so inflammatory that it saturated the community so as to render a fair trial virtually impossible, **Mayola v. Alabama**, 623 F.2d 992, 997 (5th Cir. 1980);

-17-

and furthermore, he failed to show any juror bias, *e.g., **Busby***, 359 F.3d at 725-26.

### 3.

Berry next requests a COA for an IAC claim. As discussed *supra*, Berry was required to demonstrate in state court both that such performance was deficient, and that it prejudiced his defense. ***Strickland***, 466 U.S. at 687. Under AEDPA, review by the district court was limited to whether the state-court's IAC decision was unreasonable.

For that purpose, counsel's performance is deficient if it falls "below an objective standard of reasonableness". *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id.* at 689.

To establish prejudice, Berry was required in state court to demonstrate there was a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different". *Id.* at 694. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.*

Of the numerous IAC claims raised in his federal habeas application, Berry requests a COA only for such claims relating to two separate occurrences during his resentencing trial. The first claim is that counsel was ineffective because he failed to object to Berry's being described as a "habitual offender" during *voir*

-18-

*dire*. The second claim is that counsel failed to "proper[ly] record" the prosecutor's engaging in theatrics by stomping around the victim's clothes, which were lying on the floor, during closing argument when describing how Mary Bounds was hit, an act Berry contends was inflammatory and prejudicial; Berry claims this issue has *not* been properly reviewed in either the state or federal proceedings. For this COA request, Berry references, again without discussion, the earlier-described *Grayson* Memo.

a.

Concerning the requested COA for the habitual-offender claim, the Mississippi Supreme Court, on appeal from Berry's first trial, held "compelling reasons" supported the requirement that a jury should have been made aware that Berry's status as a habitual offender meant a "life" sentence means "life without parole". **Berry I**, 575 So.2d at 13. At the resentencing trial, the court disclosed during *voir dire* that Berry was a habitual offender and included this in its instructions. **Berry IV**, 882 So.2d at 163. Berry appealed the use of the trial court's language, contending it was improper under Mississippi Rule of Evidence 404(b) (prohibiting evidence of prior offenses to show party acted in conformity with past behavior). The Mississippi Supreme Court held Berry's claim procedurally barred because his counsel had *not* objected to the use of the statements. **Berry II**, 703 So.2d at 277.

-19-

In his state-habeas petition, Berry claimed: counsel was ineffective for failing to object to either the trial court's statements or its sentencing instructions which stated he was a habitual offender. The state-habeas court held Berry's claim unfounded; the resentencing court was merely applying the Mississippi Supreme Court's holding in *Berry I* and, therefore, there was no basis for an objection. *Berry IV*, 882 So.2d at 163.

The district court found Berry's counsel *did* object twice to the resentencing court's use of the words "habitual criminal", in both a motion in limine and an oral objection to the instructions, whereupon the resentencing court made clear it was following the directives of *Berry I*. Accordingly, the district court ruled Berry's counsel acted reasonably and "owed no duty to continue objecting". *Berry V*, 2006 WL 2865064 at *21.

b.

Concerning the requested COA for the prosecutorial-theatrics claim, the prosecutor, while stomping on the floor during closing argument said: "But what did he do, he struck her and struck her and struck her. He stomped her". Berry's counsel objected and asked that the record reflect the prosecutor was "stomping on the floor". The Mississippi Supreme Court held on appeal: while theatrical, it was difficult to determine the egregiousness of the prosecution's demonstration; it was brief and conducted while the prosecutor was arguing the facts. *Berry II*, 703 So.2d at 280-81.

-20-

That court held: even though the trial court sustained Berry's objections to these theatrics, because counsel subsequently did *not* ask the jury to disregard the objectionable behavior, there was no error, pursuant to state rule. *Id.*

In his state and federal habeas petitions, Berry raised the claim as an IAC claim. The state-habeas court denied it, finding the matter had been considered previously in **Berry II** and no prosecutorial misconduct had been found. **Berry IV**, 882 So.2d at 165. The district court also denied Berry's claim, holding defense counsel *did* object and thus acted reasonably; further objections might have drawn too much attention to the matter. **Berry V**, 2006 WL 2865064 at *22.

### c.

For relief on either IAC claim, the district court noted, Berry was required to show the Mississippi Supreme Court's application of **Strickland** was unreasonable under AEDPA. For each of the two IAC claims for which a COA is requested, reasonable jurists would *not* dispute the district court's holding, under AEDPA, that counsel's performance was *not* deficient; he did object in both situations to what he felt was prejudicial conduct. *E.g.,* **Parr v. Quarterman**, 472 F.3d 245, 256 (5th Cir. 2006) (holding counsel's errors must be so serious that counsel was not functioning as the "counsel" guaranteed in the Sixth Amendment). To continue to object on the habitual-offender issue or the

-21-

prosecutorial-theatrics issue would have belabored the point and might have given it more attention then it was due.

4.

Regarding the four instances of claimed prosecutorial misconduct at his resentencing trial for which he sought federal habeas relief, Berry next requests a COA for his claim that the prosecutor's seeking the death penalty at the resentencing trial was for vindictive purposes and, therefore, constituted prosecutorial misconduct. For his first trial, Berry was offered, but refused, a lesser sentence which did *not* include the death penalty. This offer was *not* renewed, however, for his resentencing trial.

Accordingly, prior to that trial, Berry moved to bar the State from seeking the death penalty. Berry moved the court to enter a life sentence based upon what counsel alleged to be the arbitrary application of the death penalty; in support, Berry cited analogous cases where a plea bargain had been offered the defendant. The State distinguished those cases, claiming they involved defendants and victims who were family members. The motion was denied.

On appeal, the Mississippi Supreme Court found Berry proffered no evidence to show plea bargains were offered to defendants in an arbitrary manner. The court noted: the prosecutor properly distinguished the two cases submitted by Berry where plea bargains were offered; and, moreover, Berry had "no constitutional right to

-22-

a plea bargain". ***Berry II***, 703 So.2d at 282 (quoting ***Weatherford v. Bursey***, 429 U.S. 545, 561 (1977)).

Berry raised the claim again in the state-habeas proceeding. The state-habeas court noted the claim had been already rejected on appeal in ***Berry II*** and, in any event, found the prosecutor's conduct did *not* deprive Berry of a fundamentally fair trial. ***Berry IV***, 882 So.2d at 166.

In holding the state-court decision on this claim was *not* unreasonable under AEDPA, the district court was persuaded by the State's claim that it was *not* required to renew a plea offer that had previously been rejected once Berry put the State to its proof and received an adverse result. ***Berry V***, 2006 WL 2865064 at *31. Therefore, it held: "[I]n [the] light of the discretion afforded prosecutors and the lack of evidence of arbitrariness", Berry could *not* show a substantial denial of a constitutional right. ***Id.*** at *32.

In seeking a COA for this prosecutorial-misconduct claim, Berry maintains erroneously that the district court failed to fully address the claim. As discussed, Berry does *not* have a constitutional right to plea bargain. Therefore, as long as the prosecutor acts

> [w]ithin the limits set by the legislature's constitutionally valid definition of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so

-23-

> long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (internal citations and quotations omitted). For COA purposes, Berry has *not* presented any evidence of arbitrariness (or sought to rebut the manner in which the State distinguished the cases he submitted). In sum, he fails to satisfy the standard for receiving a COA for this claim.

5.

Berry's fifth, and final, COA request concerns the claimed improper admission at resentencing of 15 photographs and one videotape of the victim's body and surrounding crime scene. For this COA request, Berry contends the district court erred in denying habeas relief without reviewing this evidence, which he asserts was used solely to inflame and prejudice the jury. The federal habeas court was unable to locate the photographs and videotape because Berry did not provide them for the court's review. Berry complains, however, that the evidence was within the State's possession and to deny relief based on *his* inability to produce it for federal-habeas review was "unconscionable".

In his appeal from his first trial, Berry presented an evidentiary challenge to the photographs' admissibility. The Mississippi Supreme Court ruled their admission was within the sound discretion of the trial court. *Berry I*, 575 So.2d at 10. On

-24-

appeal from Berry's resentencing trial, the state supreme court again affirmed the use of the photographs, as well as the videotape, ruling they were proof of the requisite "heinous" aggravating circumstances.  In addition, although it ruled the subsequent use of the evidence in closing argument was only to inflame the jury, it held such conduct was *not* so prejudicial as to deny Berry a fair trial, especially given the "wide latitude" afforded closing arguments.  *Berry II*, 703 So.2d at 277-78.

As noted, the district court was *not* able to view the evidence at issue.  In any event, it addressed two claims by Berry:  the admission of the evidence was improper; and the prosecutor's use of that evidence denied Berry a fair trial.  As to admissibility, the district court held: evidentiary rulings are *not* cognizable on federal habeas review, unless a specific constitutional right was impeded or the ruling rendered the trial fundamentally unfair. *Berry V*, 2006 WL 2865064 at *32 (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)).  Because the evidence was introduced to supplement an Officer's testimony regarding the crime scene, they were held to be relevant and their admission *not* in error. Regarding the prosecutor's use of the evidence during closing argument, the district court ruled:  there was substantial evidence on which to base its decision; and the use of the such evidence did *not* deny Berry a fundamentally fair trial.  *Id.* at *33 (citing

-25-

*Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  Accordingly, it held the state-court decision was *not* unreasonable under AEDPA.

Berry does *not* specifically contest these rulings.  Nor does he state, much less justify, why he did *not* present the contested evidence for review by the district court.  Moreover, for COA purposes, he totally fails to show he was denied a fundamentally fair trial by the admission of the evidence.  Therefore, as with his other COA requests, he fails to show he is entitled to a COA for this claim.

### III.

For the foregoing reasons, a COA is

*DENIED.*